MARIE EULALIE MONTFORT *v.* HER HUSBAND.

Immoveables settled as dowry, cannot be alienated during the marriage, except in the cases provided for by arts. 2338, 2339, 2340, 2341, of the Civil Code. C. C. 2337. But when made in conformity to law, the sale is definitive and irrevocable, forever freeing them from any dotal rights of the wife.

The purchaser of dotal property legally alienated, has nothing to do with the investment of the proceeds ; the husband alone has the administration of the dowry. C. C. 2330. All that the purchaser has to do is to pay the price to the husband, who may act alone for the preservation or recovery of the dowry. The proceeds stand in lieu of the property itself, and become dotal. C. C. 2327. If the husband fail to reinvest the dotal funds, the wife will have a legal mortgage on his immoveables, and a privilege on his moveables, for their restitution. C. C. 2355, 3287.

APPEAL from the Parish Court of New Orleans, *Maurian,* J.

*R. Preaux,* for the plaintiff.

*Bodin,* for the appellants.

SIMON, J. This case presents the following facts : On the 26th of October, 1829, a marriage contract was passed between the plaintiff and the defendant, by which the wife brought into the marriage, as a part of her dotal property, the undivided half of a house and lot situated in the city of New Orleans, which half was estimated at the sum of fifteen hundred dollars, with the stipulation that the estimation should not have the effect of transferring the right of ownership to the husband. In May, 1830, certain proceedings were instituted by the plaintiff's co-proprietor, for the purpose of obtaining the division of the aforesaid property by a sale thereof, to be made in the manner prescribed by law ; whereupon, after issue joined, a judgment was regularly rendered, ordering the undivided property to be sold, and the proceeds thereof to be divided between the parties in equal portions. The property was offered for sale at public auction accordingly, after having been duly appraised, and it was finally adjudicated to one Barzac, for the sum of $3050, payable in two equal instalments, at six and twelve months credit from the day of the sale, and a notarial act thereof was passed on the seventh of August, 1830. The act of sale stipulates, that as to the portion coming to the plaintiff for her undivided moiety in the proceeds of the property sold, the notes are

to remain deposited in the hands of the vendee, until the amount thereof ($1525) be reinvested by the wife or by the husband, or until a judgment of the Parish Court be rendered, ordering the vendee to deliver the notes to the wife. On the 21st of the same month, another act was passed, by which the two notes were delivered by Barzac to the plaintiff, who immediately delivered them to her husband, who acknowledged that he had received them from his wife, and that he became responsible towards her for the amount thereof. The price of the wife's dotal property, was thus paid over to the husband.

On the 4th of June, 1841, the defendant, being indebted to the opponents Dolliole and Boisdoré, in the sum of $2000, for endorsements which they had furnished him, gave them a special mortgage on certain slaves, to secure the said endorsements.

In March, 1842, the plaintiff obtained a judgment of separation of property against the defendant, liquidating her dotal rights at the sum of $1855, inclusive of the amount received by her husband from Barzac ; and an execution having been issued, it was levied upon certain slaves and other property of the defendant's, including therein the two slaves mortgaged to the opponents. The property was sold by the sheriff, and produced a sum of $4951 13, out of which, after applying the sum of $2972 85, to the satisfaction of a claim secured by legal mortgage in favor of the defendant's minor child, anterior to that of the plaintiff, there remained a balance of $1978 28, subject to be applied to the satisfaction of the plaintiff's judgment. The proceeds of the sale of the two slaves mortgaged to the opponents, amounted to the sum of $1600.

Dolliole and Boisdoré, mortgage creditors of the defendant, made opposition to the sheriff's paying over to the plaintiff the balance of the proceeds of the sale of the property, on several grounds, the most important of which, and indeed the only one which was insisted on in the argument, is ; that the plaintiff cannot be allowed to exercise any hypothecary claim against her husband's property, for the amount by him received from the sale of her dotal property, as by law she is entitled to the restitution of the property itself ; which, being dotal, could not be alienated, and

Montfort v. Her Husband.

which she may recover back in kind, in consequence of the decree of separation of property by her obtained.

The inferior judge overruled the creditors' opposition, and they have appealed.

The question here presented appears under the facts of the case, to be a very simple one ; as, from the view we have taken, its solution depends merely on the clear and precise terms of several articles of the Civil Code, which, in our opinion, are not subject to any two interpretations. It is a well known rule, under our laws, that immoveables, settled as dowry, cannot be alienated during the marriage (Civil Code art. 2337) except in the cases provided for by arts. 2338, 2339, 2340 and 2341. This last article provides that, dotal immoveables may be sold, with the authorization of the judge, at public auction, after three advertisements, &c. " when the immoveable is held undivided with a third person, and the same is ascertained not to be susceptible of being divided ;" and " in all such cases, what remains unemployed, out of the proceeds of the sale, above the necessities which have been the occasion of the sale, shall remain dotal effects, and shall be laid out as such to the benefit of the wife." It is not pretended in this case, that the legal formalities were not strictly complied with ; indeed, the record shows that the requisites of the law were regularly followed, and we must consider the alienation of the plaintiff's dotal property, being one of the cases permitted and authorized by our Code, as complete and binding upon her. If so, how could she sue to recover back the property, and how could she be entitled to its restitution ? Its alienation was required for the purpose of putting an end to a community of right, or of ownership, which one of the co-proprietors was entitled to dissolve under the well known rule that " no one can be compelled to hold property with another" (Civil Code, art. 1215 ;) and its subsequent recovery by the plaintiff, would necessarily bring it back to the state of indivision or community, which, by permitting its alienation, it was the object of the law to avoid. This, in our opinion, cannot for a moment be countenanced ; for the law, instead of affording to the innocent purchaser of dotal undivided property the protection which, from the exception to the general rule, and from the obvious intention of the legislator, ought to be

extended to him for the security of his title, would often be used as a snare to extort from him the most unjust and iniquitous advantages. This is so clear to our minds, that we deem any further comment on the articles of our Code unnecessary; and we conclude that the sale under consideration, made with and in conformity to the requisites and formalities of the law, must be considered as definitive and irrevocable, and forever free from the exercise of the dotal rights of the plaintiff.

It has been urged, however, that it was the duty of the purchaser to see that the funds proceeding from the sale, were reinvested or laid out as dotal funds for the benefit of the wife; and that this requisite not having been complied with, the sale cannot have any greater effect than that of any other dotal property. We have been unable to find any thing in our law that would favor any such pretension. Art. 2341 does not say by whom the investment is to be made; and we are not prepared to say that the purchaser of the dotal property thus legally alienated, had any right to interfere in the investment of the wife's funds, and in the administration of her dotal effects. This properly belongs to the husband, who alone has the administration of the dowry (Civil Code, art. 2330;) and it seems to us, that all that the purchaser has to do, is to pay the amount of his purchase to the husband, who, according to our law, may act alone for the preservation or recovery of the dowry. The proceeds of the dotal property stand in lieu of the property itself; they become dotal, and as such, they must be given or paid over to the husband. Civil Code, art. 2327. Arts. 2355 and 3287 of the Civil Code, which say, that "the wife has a legal mortgage on the immoveables, and a privilege on the moveables of her husband, for the restitution of her dowry, and *for the reinvestment of the dotal property* sold or alienated by the husband," corroborate the view we have taken on this subject, and show clearly that the dotal rights of the wife, are so secured by the legal mortgage and privilege thus allowed her, that if the husband fails to reinvest her dotal funds, his own property will immediately become subject to the reinvestment, and will, as such, under the mortgage, stand in lieu of the property itself, to secure the replacing of her dotal effects, (*pour le rem ploi des biens dotaux.*)

Now, in this case, the rights of the opponents are far posterior to the legal mortgage of the plaintiff. When they accepted the special mortgage given by the defendant, they knew that the property was subject to the rights of his wife ; nay, they expected to obtain her renunciation, and had prepared their act accordingly. They knew that her dotal property had been sold in a legal manner ; that the sale was perfect under our law ; that the payment of the proceeds had been made to the husband. At all events, it was easy for them to have ascertained that the plaintiff's dotal funds had been put in the possession of the defendant, that they never had been reinvested, and that the husband's property was legally mortgaged to secure the replacing or the reinvestment of those dotal funds.

We are aware that the question, as discussed by the counsel, was presented on the supposition that the plaintiff was entitled to sue for the restitution of her dotal property, and to recover it back to the prejudice of the purchaser ; and we have carefully examined the several authorities quoted and commented on by the counsel, as they favored the pretensions of their respective clients. But, as we have already said, they cannot have any bearing upon the real question at issue ; and we must abstain from expressing any opinion on the question whether a married woman, whose dotal property has been illegally sold during the marriage by the husband, can be allowed to exercise her hypothecary action on her husband's property to the prejudice of his other mortgage creditors, when she may cause the alienation to be set aside after the dissolution of the marriage, or after the separation of property. Or, in other words, whether the wife has a right to select her action for the recovery of her dotal effects, in such manner as to abandon her action *ad rem*, and maintain and ratify the illegal alienation, to the prejudice of the husband's mortgage creditors. This question, which would perhaps arise out of art. 2342 of our Code, is inapplicable to this case—does not seem to grow out of the record—and does not, in our opinion, require any further investigation. It is clear, that, as was very properly observed by the judge, *a quo*, in his written opinion, the action to annul the sale, would be of little or

no avail to the plaintiff; and she cannot be compelled to do a vain thing.

*Judgment affirmed.*